HOUSTON, Justice.
This is a workers’ compensation case.
The pertinent facts are as follows: In 1976, when George Bratton was 59 years old, he suffered a heart attack and retired with a disability pension from a job he had worked at for 32 years. Two years later, in 1978, the Social Security Administration determined that he was eligible for Social Security disability benefits because of his heart condition. Thereafter, in 1985, Bratton suffered a stroke that caused weakness to one side of his body. In 1988, at the age of 71, Bratton applied for a job with Wal-Mart Stores, Inc. He told the interviewer that he had had a heart attack and a stroke, but that he felt he was stable enough to work. Wal-Mart hired Bratton as a “greeter” at a Wal-Mart store; the main function of a greeter was to welcome customers as they entered the Wal-Mart store and to offer them information and assistance. He also performed other activities, including helping customers with packages, locating items for customers, and caring for plants in the garden shop. After his first year of employment with Wal-Mart, Bratton began working 30 hours a week, which Wal-Mart considered to be full-time employment. Wal-Mart acknowledged that Bratton was an excellent employee, that it had no complaints about his job performance, and that he was a valued employee. In fact, Wal-Mart gave Bratton an award for being such a good employee. The trial court specifically found that Bratton had performed his duties “efficiently.”
At the time of the injury made the basis of this action, Bratton was watering plants in the garden shop section of the store. While doing so, he tripped over a garden hose, fell, and struck the back of his head on the concrete floor. Other Wal-Mart employees assisted him after the fall, and the accident was immediately reported to his supervisors. Wal-Mart’s company physician hospitalized Bratton for eight days with a diagnosis of closed-head trauma, abrasions, and contusions to his lower back. The company’s physician then referred Bratton to the neurologist who had treated Bratton following the stroke in 1985, from which the neurologist testified that Bratton had almost completely recovered. Bratton’s symptoms after the accident included “emotional liability,”[1] headaches, neck pain, an unsteady gait, and verti *1081 go. The neurologist testified that only the headaches and neck pain were attributable to the fall at Wal-Mart. He further testified that he did not think Bratton should return to work, because of his unsteady gait, his emotional problems, the fact that he had suffered a stroke, and his age. However, the neurologist did not restrict Bratton’s activities, nor did the neurologist assign Bratton a disability rating for the fall at Wal-Mart. According to the neurologist, the chances of Bratton’s falling, as compared to the chances of a younger, healthier person’s falling under the same circumstances, would be much higher because of Bratton’s other medical conditions. However, he also testified that, in his opinion, as of the time immediately before the fall, in spite of Bratton’s age and the fact that he had suffered a stroke, if Bratton had recovered from his stroke and was fairly functional and able to work, he would not have told Bratton not to work.
Bratton, his wife, a friend, and a Wal-Mart supervisor compared Bratton’s physical abilities before the accident with his physical abilities after it. They testified that although Bratton had some physical impairments as the result of his pre-existing medical condition — e.g., he walked with a slight limp, had some weakness, and moved somewhat slowly — while he was employed by Wal-Mart these physical limitations did not interfere with his ability to do his job. Further testimony established that Bratton was not only working at Wal-Mart, but was also gardening, doing yard work, and assisting his wife around the house. The testimony also reflects that after the accident Bratton was unable to walk unassisted, had severe memory loss, suffered from chronic headaches, exhibited significant depression, was unable to do most of the tasks around the house, and was unable to drive. His only outside activity was going to church.
After considering Bratton’s age, vocational experience, and physical limitations, the vocational specialist who testified for Bratton concluded that he was 100% disabled because of the accident at Wal-Mart and was unable to engage in gainful employment. She based her findings on the fact that before his injury Bratton could work at a light-duty job but afterwards could not.
The vocational specialist who testified for Wal-Mart concluded that Bratton had suffered no vocational disability as a result of his fall at Wal-Mart — that because the Social Security Administration had declared Brat-ton to be totally and permanently disabled and because of Bratton’s age and physical condition, he was already totally disabled when he went to work for Wal-Mart; and that because his disability continued throughout his employment, the accident at Wal-Mart had no bearing on the question of his subsequent employability. He testified that, in his opinion, Bratton’s employment at Wal-Mart was in contradiction of the limitations the Social Security Administration had determined created a total disability.
The trial court’s order stated:
“From the testimony, the court finds that prior to [Bratton’s] injury he was able to and did perform all of the duties of his employment in an efficient manner.... The court further finds from the testimony that following the injury and as a result of that injury[, Bratton] was not able to perform the duties of his employment and was in fact totally disabled to perform any gainful employment. In this connection, the court finds that [Bratton] had been an employee for [Wal-Mart] for approximately five years prior to the accident. During that period of time he had some physical impairments as a result of pre-existing medical conditions which included a slight limp and some weakness resulting from his stroke. Following the injury, his weakness was much more pronounced. He was unable to walk without the use of a cane, he had a severe memory loss, [had] chronic headaches and exhibited a great deal of depression. By agreement!, Bratton and Wal-Mart] entered into evidence a report and deposition of ... a certified vocational counselor and vocational consultant who testified in substance that taking into consideration [Bratton’s] age [and] his vocational experience and assuming his physical limitations^] he was totally unable to perform any gainful employment. [A] vocational specialist was called by [Wal- *1082 Mart] and testified that in his opinion [Bratton], as a result of his age and physical condition[,] was totally disabled prior to the time that he went to work for [Wal-Mart] and that his total disability continued throughout his employment ... [and that in his opinion Bratton] suffered no vocational disability as a result of his injury, it being [the vocational specialist’s] opinion that since [Bratton] was disabled throughout his employment career, whether or not he received any impairment as a result of his fall would have no bearing on the question of subsequent employability. The court further finds from the evidence that [Bratton] is not subject to retraining or rehabilitation which would enable him to resume any gainful employment. The court further finds that as a result of his injury[, Bratton has] suffered a complete loss of earning capacity[; that] the accident [that caused the injury] arose out of and in the course of his employment^ and] that he is totally and permanently disabled as defined under the Workers’ Compensation Act.”
Wal-Mart appealed, contending that the trial court erred in finding that Bratton was totally and permanently disabled because, it argues, an employee who has been previously declared to be totally and permanently disabled, who has been compensated as a result of the disability, and who subsequently returns to work and is injured, cannot recover total and permanent disability benefits under the workers’ compensation statute for a subsequent injury — that is, it argues that once Bratton was declared to be totally and permanently disabled by the Social Security Administration, his injury at Wal-Mart could not make him any more disabled. It also contended that the trial court erred by not applying Ala.Code 1975, §§ 25-5-57(a)(4)e. and 25-5-58, after finding that Bratton had suffered a permanent and total disability because, it says, Bratton had started work at Wal-Mart with certain infirmities and disabilities.
The Court of Civil Appeals affirmed the trial court’s holding that Bratton was totally and permanently disabled and held that even though Bratton previously had been adjudged to be totally and permanently disabled and had received compensation benefits for the disability, once he resumed gainful employment he became eligible for subsequent disability benefits calculated to compensate him for any loss of renewed earning capacity incurred as a result of the subsequent injury. However, because the Court of Civil Appeals found that the trial court did not address the application of §§ 25-5-57(a)(4)e. and 25-5-58 to Bratton’s disability award, it reversed that portion of the judgment calculating workers’ compensation benefits and remanded the cause to the trial court with directions to determine if §§ 25-5-57(a)(4)e. and 25-5-58 were applicable to Bratton’s disability award, and, if they were applicable, to recalculate the award of benefits accordingly. See Wal-Mart Stores, Inc. v. Bratton, 678 So.2d 1071 (Ala.Civ.App.1995).
We granted certiorari review to determine whether the trial court properly considered Bratton’s preexisting condition within the context of §§ 25-5-57(a)(4)e. and 25-5-58.
Section 25-5-57(a)(4)e. reads as follows:
“e. Second Permanent Injuries Generally. — If an employee has a permanent disability or has previously sustained another injury than that in which the employee received a subsequent permanent injury by accident, as is specified in this section defining permanent injury, the employee shall be entitled to compensation only for the degree of injury that would have resulted from the latter accident if the earlier disability or injury had not existed.”
Section 25-5-58 reads as follows:
“If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed.”
The language of these statutes clearly requires that the court apportion disability awards in workers’ compensation cases between work-related accidents and patent preexisting injuries or infirmities when calculating the degree or duration of a disability, *1083 and it clearly limits the liability of an employer to only the increased disability suffered by an employee above that which had existed before the injury made the basis of the claim.
A thorough review of the record indicates that the trial court considered and applied §§ 25-5-57(a)(4)e. and 25-5-58 when determining that Bratton was disabled and when calculating Bratton’s disability benefits. Once Bratton presented sufficient evidence as to the extent of his disability, the burden shifted to Wal-Mart to present evidence that Bratton had had a patent preexisting injury or infirmity that combined with his work-related injury to cause the disability complained of and to present evidence as to the degree or duration of the disability that would have resulted from the accident had the patent preexisting injury or infirmity not existed at the time of the accident.
Wal-Mart took the position that, because Bratton had been declared by the Social Security Administration to be totally and permanently disabled before he was employed by Wal-Mart, Bratton’s on-the-job injury could not have increased his disability, and, therefore, that Wal-Mart should have no liability under the workers’ compensation statute for Bratton’s injury. The trial court found that Bratton had been an employee of Wal-Mart for five years before the accident and that he had been able to perform all of the duties of his employment in an efficient manner until the time of his injury while employed by Wal-Mart. These facts are undisputed. Thus, the trial court found that Bratton’s stroke and heart attack did not disable him from doing the job that he had been employed to do and, therefore, it did not apportion disability benefits in accordance with §§ 25-5-57(a)(4)e. and 25-5-58. See Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 96 So.2d 159 (1957).
We find in the record sufficient evidence to support the trial court’s findings of fact.
The judgment is reversed and this cause is remanded for the entry of an order reinstating the trial court’s judgment.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.

. While one physician referred to this symptom as "emotional liability, ” another physician, apparently referring lo the same symptom, called it "emotional ability.”